# AFFIDAVIT

I, Bret Curtis, Special Agent, Federal Bureau of Investigation ("FBI"), being duly sworn, declare and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for the issuance of a seizure warrant to seize any and all funds, up to $13,403.74 in U.S. currency, in TD Bank account number 4405957684, held in the name of Whitney Adams. Such funds are believed to be the proceeds of violations of Title 18 U.S.C. § 1341 (Wire Fraud) and 18 U.S.C. § 1956, and 1957 (Money Laundering) and are therefore subject to seizure pursuant to 18 U.S.C. §§ 981(b) and 21 U.S.C. §853(f) and is subject to forfeiture pursuant to Title 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and (a)(2).

## BACKGROUND OF AFFIANT

2. I am a Special Agent with the FBI in Tucson, Arizona. I have been an FBI Special Agent since February 22, 2004. In my capacity as a Special Agent with the FBI, I have conducted and participated in numerous official investigations into mail and wire fraud, money laundering and other financial and computer crimes as well as drug trafficking crimes. I am a graduate of the FBI Training Academy in Quantico, Virginia and have also attended advanced training classes in the areas of white-collar crime.

3. As an FBI Special Agent, I am familiar with the use of financial accounts by those who operate fraudulent schemes and the types of transactions reflected on financial account records. I am also familiar with the principles of tracing assets into and through financial accounts.

4. The facts set forth in this affidavit are based on my personal observations, my training and experience, my review of documents, and interviews with witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested seizure warrant and does not purport to set forth all of my knowledge of or investigation

into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## FACTS

5. On April 27, 2022, a federal grand jury in Tucson, Arizona returned an indictment against Whitney ADAMS and Flavia ANNANG, alleging one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. The indictment was assigned case number CR-22-00893-TUC-JCH-(BGM). My investigation leading up to that indictment showed that Adams and Annang had established and used bank accounts to receive and transfer fraudulent proceeds they received from victims of online romance and inheritance schemes.

6. Unknown co-conspirators created phony online dating profiles and personas to engage in online chats, text messaging, Voice over Internet Protocol (VoIP) calls, and otherwise with unwitting Victims located in the United States in efforts to convince those Victims they were involved in an online romantic relationship with a real person. These unwitting Victims were usually elderly or older men. ANNANG's and ADAMS' co-conspirators then convinced the Victims to send money to, or on behalf of, those fake romantic partners to collect a fake inheritance that was supposedly due to the romantic partner. The Victims believed the money was to pay attorney's fees, customs duties, government fees, taxes, or other expenses related to "releasing" the inheritance and were often told that they would share in the ultimate inheritance or that the receipt of the "inheritance" proceeds would allow the fake romantic partner to join the Victim in the United States. The co-conspirators provided the Victims with addresses to mail checks to and bank accounts to wire money or deposit checks to, which were controlled by ANNANG, ADAMS, or other co-conspirators. ANNANG, ADAMS, and the co-conspirators then fraudulently transferred and/or kept the Victims' money and no "inheritance" proceeds were ever remitted in exchange.

7. Among the Victims who sent funds to ANNANG, ADAMS, or their co-conspirators during the conspiracy alleged in the indictment, in unsuccessful attempts to claim inheritances, were two Arizona men. Victim #1, age 67, resides in Sierra Vista, Arizona and fell victim to an inheritance scam in which he believed he was sending money for fees to release an inheritance belonging to his online girlfriend. Bank records show that between July 2018 and June 2020, Victim #1 sent more than $283,000 to various individuals via wire transfers and other means in an unsuccessful effort to claim the inheritance. Victim #1 sent some of his money to Gulit Bronx Enterprise, Inc., in Massachusetts. Examination of Gulit's bank records showed that Victim #2 also sent money to Gulit.

8. I interviewed Victim #2 on June 25, 2021, and several times thereafter. Victim #2, age 68, lives in Flagstaff, Arizona. In 2015, Victim #2 was introduced to his friend's online girlfriend who called herself Stephanie Williams. Williams told Victim #2 her parents died in Ghana leaving a large inheritance of gold bars valued at over $10,000,000. Williams put Victim #2 in contact with people claiming to be attorneys and government representatives who said they would help Williams and Victim #2 obtain the inheritance for a fee. Williams and her associates directed Victim #2 to send money to different people so they could claim the inheritance. Williams promised to share the inheritance with Victim #2 if he made the payments. Between 2015 and 2022, Victim #2 sent over $5,000,000 to different people in an unsuccessful effort to collect the inheritance.

9. Two of the individuals Victim #2 was directed to send money to were ADAMS and ANNANG. Between September 16, 2020, and June 21, 2021, Victim #2 sent eight (8) payments, totaling $1,220,662, to ADAMS and ANNANG, and to business accounts belonging to Flavy Merchandising (controlled by ANNANG) or McWells Auto Logistics (controlled by ADAMS), in an unsuccessful effort to collect the inheritance.

10. On April 8, 2022, in 22-05750MJ, United States Magistrate Judge Lynnette C. Kimmins issued a criminal complaint and arrest warrants for ANNANG and ADAMS.

That complaint contains additional facts regarding the conspiracy not recounted in detail here.

11.     On April 13, 2022, I arrested ANNANG and ADAMS in Hagerstown, Maryland. ADAMS agreed to be interviewed and admitted she created her own dating site profiles using photographs of people she found online. She admitted to using these fraudulent dating site profiles and social media profiles to ask men for money and gifts. ADAMS described how her associates in Ghana create dating sites, and social media site profiles using photographs of attractive people in an effort to attract victims from the United States who might send them money. ADAMS admitted that people in Ghana paid her to receive funds into her bank accounts and send the money to them in Ghana. She receives 5% for every transaction she facilitates using her accounts. ADAMS suspected the people who sent her money were victims of fraud.

12.     ADAMS said she had an account at TD Bank.

13.     TD Bank records show that ADAMS has four accounts at TD Bank. Three accounts have minimal balances, and the fourth, Account 4405957684, in the name of Whitney Adams, has a current balance of $13,403.74. That account has been frozen by TD Bank.

14.     The analysis of TD Bank account 4405957684 shows that between March 11, 2022, and April 15, 2022, the account received wires, a cash deposit, a cashiers check, an official check, and several Zelle transfers, with some funds exiting the account, leaving a balance of $13,403.74. I called some of the individuals who deposited money into this account, and matched the name from another victim I had learned about earlier in the investigation, and learned that in excess of $13,403.74 was deposited into ADAMS' account in furtherance of apparent romance / inheritance schemes as follows:

    a.     <u>$2700.00</u>: On March 31, 2022, and April 11, 2022, Victim J.M. wired $1,500.00 and $1,200.00, respectively, into ADAMS' TD Bank Account 4405957684. On April 26, 2022, I interviewed Victim J.M., age 58, who resides in

Stratford, Connecticut. He fell victim to a romance scam in which he believed he was sending money for fees to release an inheritance belonging to his online girlfriend. During the spring of 2020, Victim J.M. met a person calling herself Elizabeth Wade on an online dating site. They started an online romantic relationship and communicated with each other over the phone. Wade told Victim J.M. her father died in England leaving her a large inheritance consisting of gold bars. Wade asked Victim J.M. to send money to different accounts belonging to ADAMS to pay for fees so they could claim the inheritance. Both the March 31, 2022, and April 11, 2022, wires to TD Bank Account 4405957684 were sent by Victim J.M. in an unsuccessful effort to claim the inheritance. Victim J.M. also provided bank statements showing on July 14, 2021, and November 19, 2021, he wired $8,000 and $7,000, respectively, to another bank account belonging to ADAMS in an unsuccessful effort to claim the inheritance. The notes on Victim J.M.'s bank statements associated to these wire transfers to ADAMS' accounts listed Wade's name (Victim J.M.'s online girlfriend) as the purpose for the transfer.

b. $7000.00: On April 11, 2022, Victim C.S. wired $7,000 to ADAMS' TD Bank Account 4405957684. On April 26, 2022, I interviewed Victim C.S., age 56, who resides in Sherman, Texas. Victim C.S. fell victim to a romance scam in which he believed he was sending money for fees to release an inheritance belonging to his online girlfriend who said she was in Finland. Victim C.S.'s girlfriend told him her parents died in Finland leaving her a large inheritance consisting of gold bars. Victim C.S.'s girlfriend directed him to send money to ADAMS to pay for fees so they could claim the inheritance. Victim C.S. wired $7,000 to ADAMS' TD Bank Account 4405957684 on April 11, 2022, in an unsuccessful effort to claim the inheritance.

    c.    <u>$7500.00</u>: On March 11, 2022, a Trustmark Official Check for $7,000.00 and a Navy Federal Credit Union Check for $500.00, both from Victim A.C., were deposited into ADAMS' TD Bank Account 4405957684. I recognized Victim A.C.'s name from earlier in the investigation when I learned Victim A.C had sent a $5,500 wire to a different account held by ADAMS at PNC Bank which resulted in PNC Bank freezing that account because of suspected fraud. On April 27, 2022, I interviewed Victim A.C., age 69, from Madison, Mississippi. Victim A.C. fell victim to a romance scam in which he believed he was sending money for fees to release an inheritance belonging to his online girlfriend. Victim A.C.'s girlfriend told him her father died in the United Arab Emirates (UAE) leaving her a large inheritance consisting of gold bars. Victim A.C.'s girlfriend, and her associates, directed him to send money to ADAMS to pay for fees so they could claim the inheritance. During a recorded call on March 18, 2022, with an Undercover FBI Agent posing as a PNC Bank Investigator, ADAMS said the reason Victim A.C. sent her money was because Victim A.C. was her boyfriend for three or four years. However, during my interview with ADAMS on April 13, 2022, ADAMS admitted she lied to the PNC Bank Investigator about who Victim A.C. was. ADAMS said she did not really know who Victim A.C. was and admitted that Victim A.C. was not really her boyfriend. ADAMS said the truth was she used the money Victim A.C. sent her to buy sneakers from Nike.com for a Ghanian associated named Jalil Abdul.

15.    As of today's date, the balance in ADAMS' TD Bank Account 4405957684 is $13,403.74, of which at least that amount is derived from proceeds traceable to wire fraud and money laundering and are subject to seizure and forfeiture.

## CONCLUSION

16.     Based on the information contained in this affidavit, there is probable cause to believe that up to $13,403.74 in funds in TD Bank Account 4405957684, held in the name of Whitney Adams, located at TD Bank, 1701 Route 70 East, 1st Floor, Cherry Hill, New Jersey 08034 are any are any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18 U.S.C. § 1341 (Wire Fraud) and 18 U.S.C. §§ 1956 and 1957 (Money Laundering).  As such, the above described property is subject to seizure pursuant to 18 U.S.C. §981(b) and 21 U.S.C. §853(f) and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and (a)(2).

17.     An order under Title 21, United States Code, Section 853(e) may not be sufficient to ensure the availability of the properties for forfeiture because there is reason to believe that the properties are in the custody of a financial institution, which custodian cannot reasonably be relied on to abide by an order to maintain the property in substantially the same condition as it is at the present time in order that it will be available for forfeiture, because despite orders pursuant to Section 853(e), financial institutions have released funds.

I swear, under penalty of perjury, that the foregoing is true and correct.

**BRET CURTIS**
Digitally signed by BRET CURTIS
Date: 2022.05.05 09:29:43 -07'00'
_____
Bret Curtis, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me telephonically this 5th day of May, 2022.

*Leslie A. Bowman*
_____
Leslie A. Bowman
United States Magistrate Judge